**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 13-cv-01652-CMA-KLM

MT. HAWLEY INSURANCE COMPANY,

      Plaintiff,

v.

NATIONAL CASUALTY COMPANY,

      Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Mt. Hawley Insurance Company's ("Mt. Hawley") and Defendant National Casualty Company's ("NCC") Motions for Summary Judgment.  (Doc. ## 23, 25.)  Because NCC does not have a duty to defend any party in connection with the underlying lawsuit, the Court grants NCC's Motion and denies Plaintiff's Motion.

## I.    BACKGROUND

### A.    STATE LITIGATION

On August 15, 2010, Twenty Niners, LLC, doing business as Grand Junction Motor Speedway ("Speedway")—a company that operates a go-kart track in Colorado—leased its premises to Colorado Junior Karting Company, which hosted an International Kart Federation ("IKF") sanctioned race event.  (Doc. # 25, ¶¶ 31, 32.)  Before the race, during a practice session, a maintenance/recovery vehicle entered the racetrack and

collided with and killed a minor go-karter.  (*Id.* at ¶ 30.)  The minor's parents sued

Speedway, Speedway employees—Darren Cook, Stacey Cook, and Richard Talley,

IKF, and others[1] in state court ("State Litigation").  (Doc. # 23, ¶ 1.)  Plaintiff in the

instant action, Mt. Hawley, has defended IKF as its inured and Speedway and its

employees as additional insureds under IKF's policy in the State Litigation.  (*Id.* at

¶¶ 38, 41.)

**B.   NCC'S INVOLVEMENT**

During August of 2010, Speedway was a member and participating track of

National Karting Alliance ("NKA"), which is insured by NCC, the Defendant in the instant

case.  (Doc. # 23, ¶¶ 12, 22.)  NCC issued a commercial general liability insurance

coverage policy ("NKA Policy") to NKA for the period January 1, 2010 to January 1,

2011.[2]  (Doc. # 25, ¶ 1.)  Neither NCC nor NKA is a party in the State Litigation;

however, because Speedway was a member of NKA and is being funded for its defense

in the State Litigation by IKF's insurance company, Mt. Hawley, NCC as NKA's

insurance company is implicated in this case.  (Doc. ## 23, ¶¶ 12, 41; 25, ¶ 24.)

NKA is a membership-based association of independent tracks, clubs, and

promoters of kart and small vehicle racing across the United States.  (Doc. # 25, ¶ 15.)

---

[1] The underlying lawsuit was filed in state court in Douglas County (Doc. # 25, ¶ 22) and is captioned Jason and Tracy Duncan v. International Kart Federation, Colorado Junior Karting Club, LLC, Twenty Niners, LLC d/b/a Grand Junction Motor Speedway, Stacey Cook, individually and also d/b/a Grand Junction Motor Speedway Kart Club, Richard Talley, Colorado Junior Karting Club Board of Directors, Jay Jacabellis, Scott Hannum, Mike Weatherman, Darren Cook (Doc. # 23–2, ¶ 1).  The underlying lawsuit alleges Speedway is responsible and vicariously liable for the acts of its employees.  (*Id.* at ¶ 6.)
[2] The issued policy number is KEO0000000828700.  (Doc. # 25, ¶ 1.)

One of the advertised benefits of membership in NKA is coverage under the NKA

Policy, as an additional insured.  (*Id.* at ¶ 17.)  The Additional Insured Endorsement in

the NKA Policy provides that the following persons or organizations, as defined in the

attached Schedule to the policy, are additional insureds under the policy:

> (a) Any person or organization engaged in operating, managing, sanctioning, sponsoring the "covered program," or providing the "premises" for a "covered program," including officials of the "covered program."  (b) Any "participant" (excluding drivers), "competition vehicle" owner and "competition vehicle" sponsor.  (c) Any "participant" driver, but only with respect to "bodily injury" or "property damage" to persons other than any other driver.

(Doc. # 23, ¶ 27–8.)  "Covered program" is defined as "any event which: (1) Was

specifically submitted to us as a scheduled event or activity at the inception of this

policy; or (2) Is usual or customary to your business activities and events; or (3) Has

been specifically endorsed by this Policy."  (*Id.* at ¶ 28–8.)  The Additional Insured

Endorsement is amended to include as an additional insured:

> The person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf: (A) In the performance of your ongoing operations; or (B) In connection with your premises owned by or rented to you.[3]

(*Id.*)

Each month, Speedway submitted NKA-prepared practice activity reports to

NKA.  (*Id.* at ¶ 17.)  In August 2010, Speedway's practice activity report notified NKA of

---

[3] The terms "you" and "your" refer to NKA, the named insured shown in the Declarations, and the term "us" refers to NCC, the company providing insurance.  (Doc. # 25, ¶¶ 4, 6, 10.)

the accident and death of the minor go-karter.  (*Id.* at ¶ 19.)  In addition, Speedway and

its employees, believing themselves to be additional insureds under the NKA Policy,

tendered the State Litigation to NCC for coverage.  (Doc. # 1, ¶ 19.)  NCC denied

coverage, claiming Speedway and its employees did not quality as additional insureds

under the NKA Policy.  (Doc. # 13.)

On June 24, 2013, Plaintiff, Mt. Hawley, filed the instant litigation against NCC

seeking both a declaration that NCC breached its duty to defend Speedway and its

employees in the State Litigation and a pro rata contribution of the defense costs it has

incurred on behalf of Speedway.  (Doc. #  23.)  On May 5, 2014, Plaintiff moved for

partial summary judgment (Doc. # 23) claiming Speedway and its employees qualify as

additional insureds under the NKA Policy, and NCC filed a cross motion for summary

judgment on May 30, 2014 (Doc. # 25) denying coverage and seeking a dismissal of the

claims against it.

## II.   STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*,

259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v.

Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for

4

summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   DISCUSSION

### A.   CHOICE OF LAW

5

As an initial matter, this Court must determine which state's law to apply.  "As a federal court sitting in diversity jurisdiction, we apply the law of the state where the claim was brought."  *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).  "In Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued."  *Id.* (citing *Blue Cross v. Bukulmez*, 736 P.2d 834, 841 (Colo. 1987)).  In this case, the parties agree that Indiana law applies.  The NKA Policy was issued to NKA in Indiana through an insurance agent located in Indiana.  Thus, the Court will apply Indiana law.

## B.    DUTY TO DEFEND

The parties dispute whether NCC has a duty to defend Speedway and its employees in the State Litigation.  Plaintiff contends that Speedway and its employees are each an additional insured under the NKA Policy.  Naturally, NCC disagrees.

"The interpretation of an insurance policy is generally a question of law appropriate for summary judgment."  *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind. Ct. App. 2008).  "Where there is an ambiguity, policies are to be construed strictly against the insurer."  *Hammerstone v. Indiana Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013).  "An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning."  *Id.*  "An ambiguity does not exist, however, merely because the parties favor a different interpretation."  *Id.*  "Where terms are unambiguous, they should be given their plain and ordinary meaning."  *Id.*  "A court

6

should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Id.*

In order for Speedway to be covered as an Additional Insured Organization, both of the following must be proven: (1) the August 15, 2010 practice session had to be a "covered program"; and (2) Speedway had to be acting on NKA's behalf during the practice session.  The Court need not address the first issue because, as set forth below, it finds that the second element is not met, i.e., Speedway was not acting on NKA's behalf.

Plaintiff argues that, because Speedway was a member of NKA, Speedway was "acting on [NKA's] behalf" during the practice run on August 15, 2010.  In support of its position, Plaintiff asserts: (1) Speedway used waiver forms supplied to it by NKA; and, specifically, Speedway obtained a waiver for the deceased minor's participation at the Speedway track on August 14, 2010; (2) the deceased minor's mother signed a "NKA Minor Report 2010" reaffirming parental consent for the deceased minor's participation at the Speedway track; (3) NKA admitted that the August 14, 2010 practice run was part of NKA's operations; (4) the accident on August 15, 2010 occurred during a practice run that included Speedway go-karters with Colorado Junior Karting Company's go-karters; and (5) Speedway paid premiums to NKA based on the number of drivers participating at the Speedway track.  NCC asserts that Speedway was not "acting on [NKA's] behalf" merely because Speedway was a member of NKA.

Under the NKA Policy, an organization shown in the Schedule is an additional insured when bodily injury is caused, in whole or in part, by NKA's acts or omissions or the acts or omissions of those acting on NKA's behalf.  As an initial matter, the parties do not dispute that the minor go-karter suffered bodily injury or that this bodily injury was not caused by NKA's acts or omissions.  Rather, the issue to be decided is whether Speedway, as a member of NKA, was "acting on [NKA's] behalf" and, thus, is an additional insured pursuant to the provisional language of the Schedule.

In order to determine the meaning of "acting on your behalf" within an additional insured endorsement, the Court must first look to binding precedent from the Supreme Court and the Seventh Circuit.  *See Weeks v. Hodges*, 871 F. Supp. 2d 811, 827 (N.D. Ind. 2012).  If there is no controlling precedent, the court must then broaden its search to include all relevant case law.  *Id.*  The Court has found no controlling authority, thus, it first turns to the endorsement to determine whether the provision at issue is ambiguous.  In this case, the Court sees nothing confusing about the terms used in the additional insured endorsement.  The actual words in question—acting on your behalf— are simple and easy to understand in their own right and easily understood within the context of the Policy.  At least three other courts have found no ambiguity in the term "acting on your behalf."  *See Marks v. Scottsdale Ins. Co.*, No. 3:14-CV-25, 2014 WL 3767116, *8 (E.D. Va. July 30, 2014); *Everett Cash Mut. Ins. Co. v. Ins. Corp. of Hanover*, No. 1:07-CV-0641, 2008 WL 4453113, *6 (M.D. Pa. Sept. 30, 2008); *Lenox v. Scottsdale Ins. Co.*, No. 04-2282, 2005 WL 1076065, *3 (D.N.J. May 5, 2005).

8

Having found the plain language of the provision to be unambiguous, the Court next addresses the parties' contentions regarding the scope of coverage for Speedway. Neither the cases cited by NCC[4] nor the one case cited by Plaintiff are of much assistance to the Court. *Great American Assurance Co. v. AES Promotions L.L.C.*, No. 2010AP100041, 2011 WL 3863328 (Ohio Ct. App. Sept. 1, 2011), cited by Plaintiff in support of its position analyzed the words "usual and customary to your business and events" as they related to a covered program within an additional insured certification. *Id.* at *5, ¶ 56. It did not evaluate whether an additional insured acted on behalf of the named insured. None of the cases cited by the parties are applicable to the issue of whether Speedway was acting on NKA's behalf on the day of the accident.

The most analogous case the Court could find was *Lenox v. Scottsdale Insurance Co.*, No. 04-2282, 2005 WL 1076065 (D.N.J. May 5, 2005), which involved an additional insured certification with the same "on behalf of" language at issue in the instant case. *Lenox* involved a member of a club who allegedly injured a third party.

---

[4] *Cuyahoga Cnty. v. State Auto. Mut. Ins. Co.*, No. 1:08-CV-01339, 2012 WL 5304083, at *2 (N.D. Ohio Oct. 25, 2012) (citing no case law, the court found that the additional insured was only entitled to indemnity from the insurance company to the extent legal liability flowed from an act or omission of the named insured); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. NGM Ins. Co.*, No. 11-CV-303, 2011 WL 6415484, at *3–4 (D.N.H. Dec. 21, 2011) (analyzing the phrase "caused, in whole or in part" as used in an additional insured certification); *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 831 F. Supp. 2d 367, 371–76 (D. Me. 2011) (discussing whether insurance company, which was already found to have a duty to defend general contractor, is obligated to reimburse general contractor for attorney fees and costs); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598–99 (5th Cir. 2011) (analyzing the duty to defend under Texas' eight-corners rule, the court examined whether the named insured or the named insured's employee was contributory negligent such that insurance company would be required to defend additional insured); *Graziano Const. & Dev. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, No. 1876 WDA 2009, 2011 WL 2409883, at *6 (Pa. Super. Ct. May 26, 2011) (evaluating whether the plaintiff's bodily injury resulted specifically from an act or omission from the named insured such that the additional insured would be covered by insurance company); *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, No. 09-1115, 2010 WL 4909600, at *4–7 (E.D. Pa. Nov. 30, 2010) (analyzing the phrase "caused, in whole or in part" as used in an additional insured certification).

The club was the named insured in an insurance policy with the insurance company. *Id.*
at *1. The member argued it qualified as an additional insured under the club's policy
with the insurance company, and, therefore, the insurance company should cover any
liability the member owed to the third party for the third party's injury. *Id.* at *2. The
court read "on behalf of" the club to include a member act done for the benefit of the
club at its request. *Id.* at *4. Because the member's acts were his own private actions
done for his own pleasure, the member did not qualify as an additional insured under
the insurance policy. *Id.* at *5.

Similarly, in *Marks v. Scottsdale Insurance Co.*, No. 3:14-CV-25, 2014 WL
3767116, *4 (E.D. Va. July 30, 2014), a member of a club caused a third party bodily
injury. The Club was the named insured under an insurance policy which contained an
additional insured certification that included "activities [members] perform on [the club's]
behalf." *Id.* at *3. The third party brought an action against the insurance company
seeking a declaration that the member qualified as an additional insured under the
club's insurance policy. *Id.* at *4. Citing *Lenox*, the Marks court read this phrase to
mean "at the direction, request, or benefit of the [club]." *Id.* at *11. Because the
member's actions were "completely personal and voluntary," the additional insured
certification did not extend to the member. *Id. See also Everett Cash Mut. Ins. Co. v.
Ins. Corp. of Hanover*, No. 1:07-CV-0641, 2008 WL 4453113, *6 (M.D. Pa. Sept. 30,
2008) (finding the language, "on [named insured's] behalf," as covering "member
activities for the benefit of the [club] or at its request").

10

In this case, the undisputed facts are as follows: On the day of the accident, Speedway leased its premises to Colorado Junior Karting Company, which hosted an IKF sanctioned race event.  Speedway's August 2010 practice activity report notified NKA of the crash concerning the minor.  Although Speedway had liability insurance through NKA's policy, Speedway acted voluntarily and for its own benefit on the day of the accident and not at the direction, request, or benefit of NKA.  Accordingly, Speedway did not act on behalf of NKA on August 15, 2010, the additional insured endorsement does not extend to Speedway in this case, and NCC has no duty to defend Speedway. [5]  Because the Court has determined that Speedway did not act on NKA's behalf, the Court need not address the additional requirement that the August 15, 2010 practice session was a "covered program."

## IV.   CONCLUSION

Based on the evidence in record, it is ORDERED that NCC's Motion for Summary Judgment (Doc. # 25) is GRANTED and Plaintiff's Motion for Partial Summary Judgment (Doc. # 23) is DENIED.  This case is DISMISSED in its entirety.  It is

FURTHER ORDERED that Defendant's MOTION for Hearing/Conference (Doc. # 26), MOTION to Reset, and Joint MOTION to Continue Joint Motion to Postpone Setting Case for Trial (Doc. # 39) are DENIED AS MOOT.

DATED:  January _____30_____, 2015

---

[5] The Court's finding obviates the need to evaluate Plaintiff's argument that NCC is liable under the "Liability to 'Participants'" coverage and breached the Policy by failing to defend Speedway and its employees.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge